UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIANG KOH,<br><br>    Plaintiff,<br><br>v.<br><br>VIDLER WATER RESOURCES, INC., MAXIM C.W. WEBB, DOROTHY TIMIAN-PALMER, NICOLE WEYMOUTH, ERIC H. SPERON, and GREGORY BYLINSKY,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by Plaintiff's undersigned attorneys, for this complaint against Defendants (defined below), alleges upon personal knowledge with respect to Plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows.

**NATURE OF THE ACTION**

1. This is an action against Vidler Water Resources, Inc. ("Vidler" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Vidler by D.R. Horton, Inc. ("D.R. Horton").

2. On April 27, 2022, Defendants caused to be filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement (the "Solicitation Statement") in connection with the

1

Proposed Transaction.

3. The Solicitation Statement, which recommends that Vidler shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Vidler's financial projections; (ii) the financial analysis performed by the Company's financial advisor, Duff & Phelps Opinions Practice, Kroll LLC ("Duff & Phelps"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Duff & Phelps and BofA Securities, Inc. ("BofA"), the Company's additional financial advisor; (iv) the sales process leading up to the Proposed Transaction; and (v) potential conflicts of interest involving Company insiders.

4. These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed decision as to whether to tender their shares in connection with the Proposed Transaction. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the expiration of the tender offer on May 24, 2022.

## JURISDICTION AND VENUE

5. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs

complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

8. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9. Plaintiff is, and has been at all relevant times hereto, an owner of Vidler common stock.

10. Defendant Vidler, together with its subsidiaries, provides potable water resources to communities in the southwestern United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "VWTR."

11. Defendant Maxim C.W. Webb ("Webb") is Chief Financial Officer and Executive Chairman of the Board of the Company.

12. Defendant Dorothy Timian-Palmer ("Timian-Palmer") is Chief Executive Officer and a director of the Company.

13. Defendant Nicole Weymouth ("Weymouth") is a director of the Company.

14. Defendant Eric H. Speron ("Speron") is a director of the Company.

15. Defendant Gregory Bylinsky ("Bylinsky") is a director of the Company.

16. Defendants Webb, Timian-Palmer, Weymouth, Speron, and Bylinsky are collectively referred to herein as the "Individual Defendants."

17. Defendants Vidler and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

18. On April 14, 2022, Vidler and D.R. Horton issued a press release announcing that they had entered into a definitive merger agreement pursuant to which D.R. Horton would acquire Vidler for $15.75 per share. The press release states, in pertinent part:

> **D.R. Horton, Inc. Announces Agreement to Acquire Vidler Water Resources, Inc.**
>
> April 14, 2022 08:30 AM Eastern Daylight Time
>
> ARLINGTON, Texas & CARSON CITY, Nev.--(BUSINESS WIRE)--D.R. Horton, Inc. (NYSE: DHI) ("D.R. Horton"), America's Builder, and Vidler Water Resources, Inc. (Nasdaq: VWTR) ("Vidler") announced today that the two companies have entered into a definitive merger agreement pursuant to which D.R. Horton will acquire Vidler for $15.75 per share in an all-cash transaction which represents a 19% premium to the 90-day volume-weighted average share price and a 39% premium to Vidler's book value of equity.
>
> Vidler owns a portfolio of premium water rights and other water-related assets in the southwestern United States in markets where D.R. Horton operates that require water for development, but face a lack of adequate supply. Vidler's highly experienced management team has a proven track record of accessing, developing and realizing value for premium water assets while expertly navigating local regulations and working with governmental entities. Post-closing, Vidler will operate as a separate operating division within D.R. Horton.
>
> Under the terms of the merger agreement, D.R. Horton, through its directly owned acquisition subsidiary, will commence a tender offer to acquire all outstanding shares of Vidler for $15.75 per share. Upon the successful completion of the tender offer, D.R. Horton's acquisition subsidiary will be merged into Vidler, and any remaining shares of Vidler will be canceled and converted into the right to receive the same consideration payable pursuant to the tender offer. Following completion of the merger, the common stock of Vidler will no longer be listed for trading on the Nasdaq. The total equity value of the transaction is approximately $291 million, and the transaction is expected to close during the second calendar quarter of 2022 subject to customary closing conditions.
>
> Gibson, Dunn & Crutcher LLP is serving as legal counsel to D.R. Horton. BofA Securities, Inc. is acting as financial advisor to Vidler and Dorsey & Whitney LLP is serving as legal counsel.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

19. The Solicitation Statement omits and/or misrepresents material information concerning: (i) Vidler's financial projections; (ii) the financial analysis performed by Duff & Phelps in connection with its fairness opinion; (iii) potential conflicts of interest involving Duff & Phelps and BofA; (iv) the sales process leading up to the Proposed Transaction; and (v) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Board; (ii) Background of the Offer; Reasons for the Recommendations of the Board; (iii) Certain Company Summary Financial Projections; and (iv) Opinion of the Company's Fairness Opinion Provider.

21. The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m. (12:00 midnight), New York City Time, on May 24, 2022 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date.

22. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions are cured. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions of Vidler's Financial Projections**

23. With respect to the Company's "Management Projections," the Solicitation Statement fails to disclose: (1) all line items underlying the Company's financial projections; (2) the net income projections of each project; and (3) a reconciliation of all non-GAAP to GAAP

metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

25. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection Proposed Transaction.

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Regarding Duff & Phelps's Analysis**

27. The Solicitation Statement fails to disclose the following concerning Duff & Phelps's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates used in the analysis; (2) the present value of future management bonuses; (3) the Company's overhead expenses and taxes; (4) the Company's cash and equivalents as of December 31, 2021; and (5) the projected annual taxable income from the projects.

28. The valuation methods, underlying assumptions, and key inputs used by Duff & Phelps in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Duff & Phelps's fairness opinion and analysis, however, fails to include key inputs and assumptions underlying the analysis.

29. Without the information described above, the Company's shareholders are unable to fully understand Duff & Phelps's fairness opinion and analysis, and are thus unable to determine

how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction.

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Regarding Potential Conflicts of Interest Involving Duff & Phelps and BofA

31. The Solicitation Statement provides that "the Company agreed to . . . pay Duff & Phelps additional fees at Duff & Phelps' standard hourly rates for any time incurred should Duff & Phelps be called upon to support its findings subsequent to the delivery of the Opinion."

32. The Solicitation Statement, however, fails to disclose: (1) Duff & Phelps's standard hourly rates; and (2) whether Duff & Phelps received or expects to receive fees in connection with supporting its findings subsequent to the delivery of its Opinion.

33. With respect to BofA, the Solicitation Statement fails to disclose whether BofA has performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received or expected to be received for providing such services.

34. The Solicitation Statement also fails to disclose the financial analyses performed by BofA, as applicable.

35. Moreover, the Solicitation Statement fails to disclose why BofA did not render a fairness opinion to the Board, particularly when it stands to receive $4.0 million for its services if the Proposed Transaction is consummated.

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Regarding the Sales Process Leading up to the Proposed Transaction

38. The Solicitation Statement provides that, during the sales process, Vidler entered into non-disclosure agreements with numerous potential buyers.

39. The Solicitation Statement, however, fails to disclose the terms of Vidler's non-disclosure agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

40. Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so.

41. This information is material because a reasonable Vidler shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 5. Material Omissions Regarding Company Insiders' Potential Conflicts of Interest

43. The Solicitation Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

44. Any communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board.

45. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**COUNT I**
**For Violations of Section 14(e) of the Exchange Act**
**Against All Defendants**

46. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Section 14(e) of the Exchange Act states, in relevant part:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

49. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

50. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

51. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

52. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

53. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

56. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

57. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

58. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

59. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

60. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

61. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

62. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

### COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

63. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

65. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

67. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

68. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.	In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.	Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.	Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.	Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 6, 2022	Respectfully submitted,

**MOORE KUEHN, PLLC**

/s/ Justin A. Kuehn
Justin A. Kuehn
Fletcher W. Moore (Admission Forthcoming)
30 Wall Street, 8th Floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*